JAMES O'NEIL v. THE TOWNSHIP OF DEERFIELD.

*Municipal corporations—Defective bridge—Liability—Notice— Evidence.*

1. In a negligence case for injuries sustained by reason of the breaking of a bridge, statements of the overseer of highways at the time of the accident, made some 18 months thereafter, that "he had not regarded the bridge as safe," are inadmissible, under the rule laid down in *Stebbins v. Township of Keene,* 55 Mich. 552.

2. While the age of a bridge may suggest probable infirmity, and impose the duty of inspection upon a township, and its condition may be such as to charge the township with knowledge, yet it cannot be charged with knowledge or notice in the absence of anything suggestive of weakness, and in spite of the lack of knowledge of or notice to either its agents or the general public of such weakness, while at the same time positive acts on the part of the township are shown indicating proper care and careful inspection.

Error to Lapeer. (Moore, J.) Argued July 1, 1891. Decided July 28, 1891.

Negligence case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Stickney & Halpin* and *S. B. Gaskill,* for appellant, contended:

1. Before a verdict can be properly directed, all of the testimony in favor of the plaintiff bearing upon the issues, and all making a case for him given on the part of the defendant, if accepted as true, must fail to make out a *prima facie* case after the most favorable construction possible; citing *Conely v. McDonald,* 40 Mich. 150; *Marcott v. Railroad Co.,* 47 Id. 1; *Gibbons v. Farwell,* 63 Id. 344.

2. In this case there can be no question but that the plaintiff received serious injury, and that the injury was the direct result of the defective and unsafe condition of the bridge in question. It therefore follows that the case should have been submitted to the jury if there was testimony which could charge the defective condition of the bridge to the negligence of the defendant, either because of defective construction when the defective stringer was put into the bridge, which would of itself be notice to the township, or by allowing the bridge to become defective, and to remain out of repair after the township, through its officers, had notice of its defective condition. If the defective stringer, which was put into the bridge in 1885, was not when put in of proper material, or was put into the bridge in such a manner as to make it unsafe, the township, by the negligence of its officers in permitting such defects in construction, had notice of the unsafe condition of the bridge, and the township would be liable; citing *Chicago v. Langlass,* 66 Ill. 361; *Brooks v. Somerville,* 106 Mass. 271.

3. From the testimony it appears that the defective stringer was taken from a dead pine tree, was flattened on both the upper and lower sides, reducing its thickness to about 10 or 12 inches, and was placed in the bridge with a span of 22 feet between the abutments. There was also testimony showing that at the time of the injury the stringer was perfectly rotten, except a small strip around the outside, and that it must have been decaying two or three years. These are facts from which the jury could have inferred that there were defects in construction in putting in the defective stringer in 1885, and that the bridge remained out of repair until the time

of the injury. Such being the case, it was error to direct a verdict for the defendant; citing *Weyburn v. Kipp*, 63 Mich. 79.

4. Taking all this testimony and putting it together, we find that, less than two months before the time of the injury, the township officers whose duty it was to have the care of the bridges of the township made an examination of the bridge in question. At that time the defect existed which caused the injury, and it could have been discovered by the exercise of reasonable care in the use of the means which they had and used on the examination. The bridge was not repaired, and the injury followed after the township had had sufficient time to put the bridge in good repair. The case should have been submitted to the jury on the question of notice, which the township had from the examination made on the 13th of April. From the testimony the jury could have inferred that the officers discovered the defect, and neglected to repair it within a reasonable time. They made the examination. The defect existed, and could be detected by the means they used, and, if they did so discover it, the township had notice, and was liable for the injury. If they did not discover it, it follows that they did not use reasonable care, because by the use of such care the defect could have been discovered with the means which they had at hand, and which they say they used in making the examination.

5. There can be no question as to the duty of township officers, as stated by Mr. Justice CHAMPLIN in *Blank v. Township of Livonia*, 79 Mich. 6, cited by counsel for defendant. " In respect to latent defects in the timbers of a bridge, it is the duty· of the highway commissioner to make *proper* and seasonable inspection to ascertain its condition as to safety for the public travel, and to *exercise due care and caution* in so doing to find defects, and the kind of inspection and the amount of care and caution required of him upon which to predicate negligence in the performance of the required duty *will depend upon all the facts and circumstances of the particular case*, and the particular neglect of duty must be pointed out."

*Geer & Williams*, for defendant.

McGRATH, J. While plaintiff was driving with a load of stone over a bridge in the defendant township, one of the stringers gave way, and plaintiff was injured. He brings this suit, claiming that the bridge was improperly constructed, and that defendant negligently allowed

the bridge to remain in a condition not reasonably safe and fit for travel. The court directed a verdict for defendant, and plaintiff appeals.

It seems that the plaintiff was driving on the westerly side of the bridge, closer to that edge than was usual to drive, and the westerly stringer broke. Plaintiff's own testimony shows that there was nothing about the stringer that indicated any weakness of the timber before it broke. It had the appearance of a sound stick of timber, and, although rotten at the heart, it had from two to three inches of sound timber around the outside, and when it broke it splintered two or three feet each side of the break. There was no evidence tending to show that any person questioned the strength of the bridge before the accident.

The testimony on the part of the township was that this stringer was about 12 by 14 inches in thickness, hewed on two sides; that it extended over a 22-foot span; that it was cut from a dead standing pine tree, and placed in the bridge in 1885; that it was sound at that time; that in 1886 the bridge was examined by the township authorities, and two new center stringers placed therein; that in 1887 the plank were removed from the bridge, and the stringers were all cleared, tested, and examined; that in April, 1888, the owner of a traction-engine, weighing nearly three tons, made a thorough examination of the bridge, satisfied himself regarding it, and took over his engine; that shortly after this the township authorities examined the bridge and stringers, and tested them, and to all appearances this stringer, with the others, was in good condition and sound. At all of these examinations the tests were made by pounding on the timbers with an axe. The accident occurred to plaintiff about two months after the last examination.

The court held that the evidence did not show either knowledge or notice to the township, and that plaintiff could not recover. I think that the circuit judge was correct. The stringer in question had been in use but three years, and had been examined with reference to its soundness but two months before the accident. There was nothing in the general appearance of the timber, or of the bridge, to indicate any weakness. Several teams were engaged in drawing stone over the bridge on the day before as well as on the day of the accident, and no one had discovered or suspected any infirmity therein. The township had neither constructive notice nor constructive knowledge that the stringer was defective.

While the age of a bridge may suggest probable infirmity, and impose the duty of inspection upon a township, and its condition may be such as to charge the township with knowledge, yet the township cannot be charged with knowledge or notice in the absence of anything that is suggestive of weakness, and in spite of the lack of knowledge of or notice to either its agents or the general public, while at the same time positive acts on the part of the township are shown indicating proper care and careful inspection.

Plaintiff introduced testimony tending to show that, some 18 months after the accident, one O'Brien, who was the overseer of highways at the time of the accident, had said that he had not regarded the bridge as safe; but, under the rule laid down in *Stebbins v. Township of Keene,* 55 Mich. 552, this testimony was improperly received.

The judgment is affirmed, with costs.

The other Justices concurred.